IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSEPH CLINT MARTIN,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>MONTGOMERY COUNTY,  )<br>TENNESSEE,  )<br>)<br>Defendant.  ) | Case No. 3:15-cv-00650<br>Judge Campbell / Knowles |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 21. As grounds for its Motion, Defendant argues that Plaintiff cannot show that a constitutional violation has occurred and has not identified a Montgomery County policy, practice, or custom that is the moving force behind any alleged violation. *Id.* In support of its Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 22), a Statement of Undisputed Material Facts (Docket No. 23), the Affidavit of Douglas Tackett (Docket No. 25, "Tackett Aff"), and the Deposition of Joseph Clint Martin (Docket No. 26, "Plaintiff's Dep.").

Plaintiff has not responded to Defendant's Motion for Summary Judgment or Statement of Undisputed Material Facts.[1]

---

[1] Defendant has subsequently filed a "Notice of Plaintiff's Failure to Respond to Summary Judgment." Docket No. 27.

Plaintiff originally filed this pro se, in forma pauperis action pursuant to 42 U.S.C. § 1983, alleging in full that Defendant violated his constitutional rights in the following ways: (1) "invasion of privacy"; (2) "cruel and unusual punishment"; (3) "sexual harassment"; and (4) "discrimination." Docket No. 1.[2] As to his invasion of privacy claim, Plaintiff argues that male and female deputies could observe him while showering, and that he has heard offending comments from deputies while showering. Docket No. 3. With regard to his sexual harassment claim, Plaintiff contends that, on June 4, 2015, he was showering and heard banging on the glass from the tower overlooking the showers, and that when he exited the shower, Deputy "Anderson" told him that Deputy "Beck" said that he was "hung like a 2 year old." *Id.*

With respect to his cruel and unusual punishment claim, Plaintiff asserts:

> We have 2 choices to pick from where we would like to eat, the floor or the toilet. We have no table or chairs to eat on away from germs and in a sanitary environment. (Very poor air circulation.) Just today on 6/5/2015, the deputies sprayed someone with mase [*sic*] on the floor below and it came up through the vents choking and cutting off air circulation, burning our skin and eyes and never open [*sic*] the door to vent it out. The deputy braged [*sic*] about spraying someone and left the pod. Montgomery County Jail policy is made to bend only in staff's favor as needed. I was just locked down for 48 hours and lossed [*sic*] my job for 6 months for receiving a broken rasor [*sic*] and because staff did not check it before giving it to me. On our write up sheet it says we can only have an investigation if the lockdown consist of 72 hours or more so I am automatically disqualified for that. I will not make parole now and I am suffering from cruel and unusual punishment in a county jail when I am TDOC.

---

[2] In the Statement of Facts section of his Complaint, Plaintiff states "See Additional Sheets" but does not attach to his Complaint additional sheets, nor does his Complaint provide further details regarding his allegations. *See* Docket No. 1. Plaintiff did, however, contemporaneously file a separate document entitled "Statement of Facts," which sets forth the factual allegations of his Complaint, and which appears to be intended to be the Statement of Facts that should be set forth in Section VI of his Complaint. Docket No. 3.

*Id.*

Finally, as to his discrimination claim, Plaintiff argues:

> There are TDOC inmates who are being housed here at Montgomery Co. Jail serving 10 years and better. I am serving a 10 year sentence as well. Let's say there are x amount of TDOC inmates in Tennessee. 90% of these TDOC inmates get to go to a state correctional facilities [*sic*], and get the opportunity to take drug and alcohol classes and programs, anger management and GED/Diploma programs along with learning different trade programs that will almost guarantee to help you make parole on your first time. I have drug charges and need help learning how to overcome my drug addiction and how to be a productive member of society once again. If I am no different than the next TDOC inmate then why haven't I been granted the same privileges as the other 90% TDOC inmates get and I am serving a 10 year sentence in a County jail. Therefore my civil and constitutional rights as a TDOC inmate gave been violated by discrimination . . .

*Id.*

Plaintiff seeks $25,000 for his invasion of privacy "and or" sexual harassment claim, as well as $25,000 and "transport" to a state facility or rehabilitation facility for his cruel and unusual punishment and discrimination claims. Docket No. 1.

On June 15, 2015, Judge Campbell issued a Memorandum Opinion and Order dismissing Plaintiff's claims against the Montgomery County Jail, as well as those for verbal harassment, discrimination, and general conditions of confinement. Docket Nos. 4, 5. Judge Campbell concluded that Plaintiff had stated "colorable claims against Montgomery County for invasion of privacy and for cruel and unusual punishment in connection with arbitrary exposure to mace." Docket No. 5, p. 2. Accordingly, only these claims remain.

For the reasons set forth below, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 21) be GRANTED.

## II. Undisputed Facts[3]

### A. Affidavit of Douglas Tackett

Douglas Tackett is the Assistant Chief Deputy of the Detention Division for the Montgomery County Sheriff's Office, has served in that capacity since 1992, and is responsible for overseeing the operation of the Montgomery County Jail ("Jail"). Docket No. 25, Affidavit of Douglas Tackett ("Tackett Aff."), ¶ 1. The Jail is a 736 bed pre-trial detention facility located in Clarksville, Tennessee, that was completed in 2004. *Id.*, ¶¶ 2, 3. The Jail was constructed in accordance with the standards set by the American Corrections Association ("ACA"), and was constructed by an Architect certified with the American Institute of Architects ("AIA"). *Id.*, ¶ 3. The Jail meets the minimum standards for the physical plant of Jail Facilities as set forth by the Tennessee Corrections Institute ("TCI"), has always been recommended for certification by the TCI, and has continuously maintained its certification by the TCI that it has complied with the Tennessee minimum standards for local correctional facilities. *Id.*

Inmates at the Jail are housed in Pods. *Id.*, ¶ 4. Each Pod is two stories and has a bank of cells upstairs and a bank of cells downstairs. *Id.* The center of each Pod is a large open area. *Id.* The male showers at the Jail are situated in the far corner of the Pod. *Id.* The showers are walled on three sides with an open entrance. *Id.* The showers are communal and there are four shower heads in each. *Id.* Three of the shower heads are along the Pod's outer wall and one shower head is on the adjacent wall near the shower entrance. *Id.*

The Jail employs both male and female deputies and is an equal opportunity employer.

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

*Id.*, ¶ 5. Of the 169 total commissioned Jail deputies, 32 are females (just under 19%). *Id.* Jail deputies are responsible for handling inmate booking and processing, visitation, transportation to court and other detention facilities, and providing security for both inmates and the facility. *Id.*

Inmates at the Jail are supervised in two primary ways: from an elevated control tower that has window access for Pod viewing and during security checks inside the Pods which are performed at a minimum of every hour. *Id.*, ¶ 6. One deputy is assigned to the control tower per shift. *Id.*, ¶ 7. The control towers have four Pods to oversee. *Id.* Tower deputies are required to maintain an accurate and legible log for the tower which lists all events occurring on the shift in all four Pods. *Id.* The tower deputy is not allowed to sleep, watch television, or engage in any activity that would cause them to be inattentive to their required duties. *Id.* The Jail has a policy that outlines the control tower deputy's duties and responsibilities. *Id.*

The showers are situated below the control tower by a distance of at least 10 feet. *Id.*, ¶ 8. In order to observe an inmate showering for any significant period of time, a deputy would have to peer over the edge of the window to specifically view the nude body of a male inmate. *Id.* Inmates in non-restricted housing areas are permitted to shower at any time during their recreation period, and may shower as often or as long as they wish. *Id.*, ¶ 11.

The Jail is staffed over three shifts: first, second, and third. *Id.*, ¶ 10. A deputy's duty assignment changes daily, and no deputy is assigned to the same post every day. *Id.* Deputies performing security checks inside the Pods are called "rovers." *Id.*, ¶ 9. Security checks are conducted once every hour during first and second shifts, and every half-hour during third shift. *Id.* Deputies are not able to see in to the showers while performing security checks inside the Pod unless they go inside the shower. *Id.* Jail deputies do not enter the showers while inmates

5

are showering, unless necessary for security related reasons. *Id.*

The supervision of inmates is an essential function and responsibility of the Jail. *Id.*, ¶ 12. The safety and security of inmates and Jail staff is primary among the many reasons why inmates must be supervised in Jail. *Id.* Jail showers are known areas with increased security risks in Jail. *Id.* Inmates may go to the shower to handle or transfer contraband or may start fights in the showers. *Id.* As such, it is important for Jail staff to have some supervisory access to shower areas. *Id.* Female deputies at the Jail may serve in the control tower or as rovers. *Id.* The duties associated with these positions may include the incidental viewing of nude male inmates. *Id.* However, such viewing would be infrequent and casual observations only and would be at a distance. *Id.* No inmate at the Jail is subjected to regular surveillance by deputies of the opposite sex while naked and it is not the policy or the procedure of the Jail to require male inmates to shower under close or extended surveillance of female deputies. *Id.*

Assistant Chief Deputy of the Detention Divisions for the Montgomery County Sheriff's Office, Douglas Tackett, is not aware of any deputy (male or female) inappropriately viewing inmates while showering, and it would not be possible for a control tower deputy to observe an inmate showering for any extended period of time and still perform the duties required of a control tower deputy. *Id.*, ¶ 13. If it were brought to Assistant Chief Deputy Tackett's attention and shown that a deputy was inappropriately viewing inmates while showering at the Jail, that deputy would be subject to disciplinary action up to and including termination of his or her employment. *Id.*

Deputies at the Jail are trained to employ the use of chemical agents against noncompliant or combative inmates in a number of limited situations. *Id.*, ¶ 14. The Jail has a policy that

outlines the appropriate use of chemical agents against inmates. *Id.*

On June 5, 2015, a Montgomery County Deputy utilized the use of a chemical agent against an inmate at the Montgomery County Jail. *Id.*, ¶ 15. That inmate was housed in M Pod, and was failing to comply with the continuous orders of a deputy. *Id.* At the time of spraying, Plaintiff was housed in the V Pod, a Pod located on an entirely different floor than where the use of force occurred. *Id.*

Deputies are required to complete a detailed incident report as well as a *Use of Chemical Agent* Form following any use of a chemical agent against an inmate. *Id*, ¶ 16. All *Use of Chemical Agent* reports and accompanying incident reports are submitted to a training officer and reviewed by a supervisor. *Id.* The deputy involved in the chemical agent spray on June 5, 2015, submitted an incident report and *Use of Chemical Agent* Form following the spray. *Id.*, ¶ 17. The *Use of Chemical Agent* Form found in the offending inmate's file notes that the chemical spray did not make contact with the inmate, indicating that the spray was not heavy in nature. *Id.*

No Montgomery County Deputy utilized a chemical agent against Plaintiff on June 5, 2015. *Id.*, ¶ 19.

Assistant Chief Deputy of the Detention Divisions for the Montgomery County Sheriff's Office, Douglas Tackett, is not aware of any deputy arbitrarily using a chemical agent against an inmate at the Jail. *Id.*, ¶ 18. Montgomery County policy clearly dictates that any improper use of a chemical agent by a deputy will result in severe disciplinary action. *Id.*

Plaintiff was incarcerated in the Montgomery County Jail from January 9, 2015, until his recent transfer to a correctional facility in Pikeville, Tennessee. *Id.*, ¶ 20. At all times relevant to Plaintiff's incarceration, the Jail had in place a grievance procedure by which inmates could

7

express complaints with the conditions of their confinement. *Id.*, ¶ 21. An inmate may request an Inmate Grievance Form from any deputy. *Id.* After filling out the grievance, the inmate may give it to any deputy. *Id.* The shift supervisor on duty reviews the grievance and handles the grievance by responding or taking action himself or assigning the grievance to the responsible supervisor for action or response. *Id.* The supervisor indicates the response or action taken on the form, signs the form, and places the original in the inmate's Jail file and has a copy returned to the inmate. *Id.*

Plaintiff has not filed any grievances related to his exposure to female deputies while showering or any arbitrary exposures to a chemical agent while an inmate at the Jail. *Id.*, ¶ 22.

At all times relevant to Plaintiff's incarceration, the Jail had in place a procedure by which inmates could submit sick call slips to the deputies requesting to be seen by Correct Care Solutions, the medical provider at the Jail. *Id.*, ¶ 23.

Plaintiff submitted sick call slips following the June 5, 2015 incident, but signed a refusal form every time he was called for his appointment. *Id.*, ¶ 24.

**B. Plaintiff's Deposition**

There are no roofs over the showers to provide privacy from being viewed by deputies in the tower. Plaintiff's Dep., 6:25-7:1.

Plaintiff can think of two occasions when he was observed by a female deputy in the shower: both times he heard banging on the window and heard a female deputy's voice. *Id.*, 7:13-15; 9:1-3; 11:15-18; 11:23-24; 18:5-10.

Plaintiff spoke to deputies about the lack of "blockers" in the male showers, but never filed a grievance about female deputies watching him in the shower. *Id.*, 11:16–23; 25:24-25 -

8

26:1-3.

Plaintiff does not know of any Montgomery County policy dictating female guards to watch a male inmate shower. *Id.* at 26:21-25 - 27:1-5.

As to his exposure to Mace, a deputy used Mace on a female inmate downstairs, and the Mace came up through the vents, causing Plaintiff to "chok[e]" and gag, his eyes to water, and him to almost throw up. *Id.* at 18:19-22. A deputy came into Plaintiff's Pod, informed the inmates of the spraying, and opened the "pie flaps" to their cells to let in outside air. *Id.* at 18:23-25 - 19:1-2. That was the only occasion when Plaintiff has felt Mace come through his air vent at the Jail. *Id.* at 22:2-4.

Plaintiff does not think the Mace exposure was intentional or that anyone was spraying him specifically, and he did not file a grievance about the Mace exposure. *Id.* at 22:5-6; 25:6-8; 25:24-25 - 26:1-3; 29:23-25 - 30:1-5.

Plaintiff has never filed grievances related to these two claims, nor has he written letters to or spoken with, anyone with any type of final decision-making authority at the Jail about these two claims. *Id.* at 25:24-25 - 26:1-3; 27:6-16.

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b. Response.** Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the instant Motion on February 29, 2016. Docket No. 21. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. . . .
>
> . . .
>
> **g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts or file his own Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The

> Court is required, at a minimum, to examine the movant's Motion
> for Summary Judgment to ensure that he has discharged [his
> initial] burden . . . The federal rules require that the party filing a
> Motion for Summary Judgment "always bears the burden of
> demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

### 1. Generally

Plaintiff essentially alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of

12

acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## 2. Eighth Amendment

The Eighth Amendment provides that:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The United States Supreme Court has held that the constitutional prohibition of "cruel and unusual punishments" forbids punishments that are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (citations omitted).

In order to establish an Eighth Amendment claim, an inmate must satisfy a two-prong test: (1) the deprivation alleged must be objectively serious; and (2) the official responsible for the deprivation must have exhibited deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

## D. The Case at Bar

As discussed above, Plaintiff's remaining causes of action concern his being observed showering by female deputies and his being inadvertently exposed to Mace.

Turning first to Plaintiff's claim of being observed showering by female deputies, the

Sixth Circuit has recognized that claims by male inmates that they have been regularly exposed to surveillance by female correctional officers can arise under the Eighth Amendment. *Mills vs. City of Barbourville*, 389 F.3d 568 (6th Cir. 2004). Of paramount import are the regularity/ frequency and distance of the viewing, as courts in the Sixth Circuit have also found that assigned positions of female correctional officers that require only infrequent and casual observations or observations at a distance, and that are reasonably related to prison needs, do not violate an inmate's constitutional rights. *See, e.g., Tensley v. Alexander, et al.*, 822 F. Supp. 411, 415 (E.D. Mich. 1993).

In the case at bar, it is undisputed that Plaintiff can think of only two occasions when he was observed by a female deputy in the shower: both times he heard banging on the window and heard a female deputy's voice. Plaintiff's Dep., 7:13-15; 9:1-3; 11:15-18; 11:23-24; 18:5-10. It is further undisputed that Plaintiff never filed a grievance about female deputies watching him in the shower or notified (either orally or in writing) anyone with any type of final decision-making authority at the Jail that he had been observed showering by female deputies. *Id.*, 25:25-25 - 26:1-3; 27:6-16.

It is additionally undisputed that the Jail employs both male and female deputies and is an equal opportunity employer. Tackett Aff., ¶ 5. Jail deputies are responsible for handling inmate booking and processing, visitation, transportation to court and other detention facilities, and for providing security for both inmates and the facility. *Id.* As part of providing security for both inmates and the facility, one deputy is assigned to the control tower per shift. *Id.*, ¶ 7. The control towers have four Pods to oversee. *Id.* Tower deputies are required to maintain an accurate and legible log for the tower which lists all events occurring on the shift in all four Pods.

*Id.* The tower deputy is not allowed to sleep, watch television, or engage in any activity that would cause them to be inattentive to their required duties. *Id.* The Jail has a policy that outlines the control tower deputy's duties and responsibilities. *Id.*

It is also undisputed that a deputy's duty assignment changes daily, and that no deputy is assigned to the same post every day. *Id.,* ¶ 10. Deputies are not able to see in to the showers while performing security checks inside the Pod unless they go inside the shower. *Id.*, ¶ 9. Jail deputies do not enter the showers while inmates are showering, unless necessary for security related reasons. *Id.*

It is undisputed that the male showers are walled on three sides with an open entrance, and are communal with four shower heads in each (three along the Pod's outer wall and one on the adjacent wall near the shower entrance). *Id.*, ¶ 4. The showers are situated below the control tower by a distance of at least 10 feet. *Id.*, ¶ 8. In order to observe an inmate showering for any significant period of time, a deputy would have to peer over the edge of the window to specifically view the nude body of a male inmate. *Id.* Inmates in non-restricted housing areas are permitted to shower at any time during their recreation period, and may shower as often or as long as they wish. *Id.*, ¶ 11.

It is further undisputed that the supervision of inmates is an essential function and responsibility of the Jail. *Id.*, ¶ 12. The safety and security of inmates and Jail staff is primary among the many reasons why inmates must be supervised in Jail. *Id.* Jail showers are known areas with increased security risks in Jail. *Id.* Inmates may go to the shower to handle or transfer contraband or may start fights in the showers. *Id.* As such, it is important for Jail staff to have some supervisory access to shower areas. *Id.* Female deputies at the Jail may serve in the

control tower or as rovers. *Id.* The duties associated with these positions may include the incidental viewing of nude male inmates. *Id.* However, such viewing would be infrequent and casual observations only and would be at a distance. *Id.* No inmate at the Jail is subjected to regular surveillance by deputies of the opposite sex while naked and it is not the policy or the procedure of the Jail to require male inmates to shower under close or extended surveillance of female deputies. *Id.*

Assistant Chief Deputy of the Detention Divisions for the Montgomery County Sheriff's Office, Douglas Tackett, is not aware of any deputy (male or female) inappropriately viewing inmates while showering, and it would not be possible for a control tower deputy to observe an inmate showering for any extended period of time and still perform the duties required of a control tower deputy. *Id.*, ¶ 13.

Based upon the foregoing, the incidental viewing of Plaintiff in the shower on two occasions by female deputies working in the control tower as part of their assigned duties to maintain the safety and security of the inmates and the facility does not rise to the level of a constitutional violation. Accordingly, Plaintiff cannot sustain this claim. Defendant is, therefore, entitled to a judgment as a matter of law with regard to this claim.

Turning to Plaintiff's claim that he was inadvertently exposed to Mace, it is undisputed that Plaintiff does not think the Mace exposure was intentional or that anyone was spraying him specifically. Plaintiff's Dep., p. 22:5-6; 25:6-8; 29:23-25 - 30:1-5. Rather, a deputy used Mace on a female inmate downstairs, and the Mace came up through the vents, causing Plaintiff to "chok[e]" and gag, his eyes to water, and him to almost throw up. *Id.* at 18:19-22. A deputy came into Plaintiff's Pod, informed the inmates of the spraying, and opened the "pie flaps" to

their cells to let in outside air.  *Id.* at 18:23-25 - 19:1-2.

It is further undisputed that this was the only occasion when Plaintiff has felt Mace come through his air vent at the Jail and that he neither filed a grievance about the Mace exposure, nor notified (either orally or in writing) anyone with any type of final decision-making authority at the Jail about this claim.  *Id.* at 22:2-4; 25:24-25 - 26:1-3; 27:6-16.

The inadvertent exposure to the secondary remnants of Mace that was utilized on another inmate in another Pod on another floor of the Jail does not meet either the subjective or the objective components of cruel and unusual punishment by excessive force under the Eighth Amendment.  Plaintiff likewise cannot sustain this claim, and Defendant is entitled to a judgment as a matter of law.

Finally, in order to hold Defendant Montgomery County, Tennessee, liable under § 1983, a plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom."  *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989).  *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he/she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Plaintiff has failed to allege the existence of any deficient Montgomery County policy, practice, or custom that caused him constitutional injury.  Additionally, it is undisputed that the Jail does not have any policy, practice, or custom of subjecting inmates to regular surveillance by

officers of the opposite sex while naked. Tacket Aff., ¶ 12. It is further undisputed that Montgomery County policy prohibits the use of chemical agents against inmates unless they are non-compliant or combative, and also prohibits the use of chemical agents as a punishment or coercive tool. *Id.* at ¶¶ 14, 18. Absent a Montgomery County policy, practice, or custom that caused Plaintiff constitutional injury, Plaintiff cannot sustain his claims.

### IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 21) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge